## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LUXURY CONCEPTS, INC.,

      Plaintiff,                   Case No. 22-10793

v.                              Hon. Denise Page Hood

BATEEL INTERNATIONAL
LLC, et al.,

      Defendants.

_____/

## <u>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [ECF No. 10]</u>

## I.    INTRODUCTION

Plaintiff Luxury Concepts, Inc. ("Plaintiff" or "LCI") alleges Defendants Bateel International LLC ("Bateel"), Ziad Alsudiary ("Al Sudiary"),[1] Ata Atmar ("Atmar"), Henrik Anderson ("Anderson"), and Bilal Elkurjie ("Elkurjie"): (1) breached the parties' contract (Count I); (2) violated the Michigan Franchise Investment Law ("MFIL"), MCL 445.1501 *et seq.* (Count II); and (3) violated the Texas Business Opportunity Act ("TBOA"), VTCA, Bus & C § 51.001 *et seq.*

---

[1] In the caption of the Complaint, Plaintiff sues Defendant Ziad Al Sudiary.  In the Complaint and in its response brief, however, Plaintiff spells this Defendant's surname in a number of ways, including "Al Sudairy" and "Al Sudiary."  Based on the caption of the Complaint, the Court will identify this Defendant by the surname of "Al Sudiary."

(Count III). ECF No. 1.  For purposes of this Order, Al Sudiary, Atmar, Anderson, and Bilal collectively will be referred to as the "individual Defendants."

On July 19, 2022, Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). ECF No. 10.  The Motion has been fully briefed. The Motion to Dismiss is granted.

## II.     BACKGROUND

On February 15, 2016, LCI entered into a franchise agreement with Bateel which granted it the "sole right to develop retail outlets and e-commerce presence and business for the sale and promotion of products . . . in Michigan" (the "Michigan Franchise Agreement"). ECF No. 10-3, PageID.136. On March 28, 2018, LCI entered into a second franchise agreement (the "Texas Franchise Agreement," together with the Michigan Franchise Agreement, the "Agreements") with Bateel for a franchise in Texas (the "Texas Franchise"). ECF No. 10-5, PageID.177. Bateel negotiated the Agreements with LCI in Michigan through e-mail, text messages, phone, and other electronic communications. ECF No. 12, Ex. A at ¶¶ 15-17. On both Agreements, LCI's address for all purposes (executing the Agreements and for purposes of notice) was "100 W. Big Beaver Rd., Suite 200, Troy, Michigan 48084, USA." ECF No. 10-3, PageID.136, 147, 153, 156.  Both

2

Agreements expressly state, "This agreement shall be interpreted and construed under the laws of the United Arab Emirates." *Id.* at PageID. 148, 156.

LCI alleges that, throughout the course of its relationship with Bateel, Bateel failed to meet its obligations under the Agreements. Citing ECF No. 12, Ex. A at ¶¶ 30-34, 49-54. Despite Bateel's failure, LCI still purchased over $1.2 million in goods from Bateel, which were shipped to LCI's Southfield, Michigan warehouse for distribution. *Id*. at ¶ 35-45. Because Bateel's retail store business model was unsustainable, especially in light of Covid-19, LCI developed a significant online e-commerce presence as Bateel's franchisee in Michigan and Texas. *Id*. at ¶¶ 46-47. Plaintiff alleges, however, that once Bateel discovered the potential of the online business that LCI developed, it started a campaign to improperly rid itself of LCI in part by changing LCI's payment terms, stopping shipment of products to LCI, removing LCI's ability to sell Bateel products, and initiating sales directly to American consumers. *Id*. at ¶¶ 46-55.

After LCI informed Defendants of this lawsuit, Plaintiff alleges that Defendants sent LCI a letter falsely alleging that LCI breached the Agreements. ECF No. 12, Ex. B. Despite Defendants' representation that LCI would have 30 days to reach a resolution of Bateel's alleged claims against it, ECF No. 10, PageID.102, on July 27, 2022, Bateel launched a lawsuit against LCI in the Dubai

Courts First Instance Court. *Id*. at Ex. C.  A hearing in the First Instance Court was held one week after Bateel served its complaint via email. *Id*. at Ex. A at ¶ 56.

## III.   APPLICABLE LAW

### A. Rule 12(b)(2)

When a defendant files a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction over the defendant exists.  *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir.2002); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). In addressing a motion to dismiss for lack of personal jurisdiction, the Court may, in its discretion: (1) conduct an evidentiary hearing to resolve any factual issues, (2) proceed to discovery, or (3) decide the issue based on the pleadings and affidavits alone. *McCluskey v. Belford High Sch.*, 795 F.Supp.2d 608, 615 (E.D.Mich. 2010) (citing *Serras v. First Tenn. Bank Nat. Assn.*, 875 F.2d 1212, 1214 (6th Cir. 1989) (the court may conduct an evidentiary hearing or allow discovery if the written submissions raise disputed issues of fact or seem to require determinations of credibility)).  For the reasons that follow, an evidentiary hearing or discovery seems unnecessary in this case, and the parties have not asked for either.

When the Court does not conduct an evidentiary hearing, it must consider the pleadings and affidavits in the light most favorable to the plaintiff. *Lifestyle Lift Holding Co., Inc. v. Prendiville*, 768 F.Supp.2d 929, 932 (E.D. Mich. 2011). "In this circumstance, the plaintiff must make a prima facie showing of jurisdiction; the court does not consider the controverting assertions of the party moving for dismissal." *Id*. In a diversity case, the plaintiff has established a prima facie case when it shows that the federal court's exercise of personal jurisdiction over the defendants is authorized by both the law of the forum state and the Due Process Clause of the Fourteenth Amendment. *Neogen Corp.*, 282 F.3d at 888.

Plaintiff asserts that the Court has specific personal jurisdiction over Defendant.  Specific personal jurisdiction in Michigan is governed by MCL § 600.715, which states, in pertinent part:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state . . .

The transaction of any business necessary for limited personal jurisdiction under MCL § 600.715(1) may be established by the slightest act of business in Michigan. *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1998).

At a minimum, specific jurisdiction requires that a defendant purposefully establish minimum contacts within Michigan such that the defendant should reasonably anticipate being haled into court here. *LAK, Inc*., 885 F.2d at 1300 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The requirement is satisfied where the defendant "purposefully avail[s] [it]self of the privilege of acting in the forum state or causing a consequence in the forum state." *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014) (quoting *Southern Machine Co. v. Mohasco Industries, Inc*., 401 F.2d 374, 381 (6th Cir. 1968)).

The Court may exercise specific personal jurisdiction over a Defendant if that Defendant's contacts with Michigan satisfy the three-part test established by the Sixth Circuit in *Southern Machine*:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine*, 401 F.2d at 381. In determining whether a party "purposefully availed" itself of the privilege of acting in the forum state, courts must determine whether the party established minimum contacts with the forum state. *Id*.

Jurisdiction is proper where the contacts proximately result from the actions of the defendant, which create a substantial connection with the forum state. *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 982 (6th Cir. 1992).

A federal district court applies the jurisdictional statute, or long-arm statute, of the state in which it sits. *See, e.g., Amway Corp. v. Kope Food Products, Inc.*, 840 F.Supp. 78, 80 (W.D. Mich. 1993). Michigan's long-arm statute allows Michigan courts to exercise jurisdiction to the full-extent allowed by the federal due process requirements. *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992). In order for a Michigan court's exercise of jurisdiction over a defendant to be consistent with due process, a plaintiff must show that the defendant had "certain minimum contacts with [Michigan] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1299 (6th Cir. 1989) (quoting *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)). This standard can be satisfied through either general or specific jurisdiction. *Id.*

## B. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review

the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.   ANALYIS

### A. No Personal Jurisdiction over Individual Defendants

The Complaint alleges that: Al Sudiary is a citizen of, and resides in, Saudi Arabia; Atmar is a United States citizen (state not specified) who domiciles in UAE; Anderson is a citizen of Denmark who resides in the UAE; and Elkurjie is a citizen of Canada who resides in UAE.  It is undisputed that none of the individual Defendants is a resident of Michigan.  In the Complaint, Plaintiff acknowledges that "even though LCI operated Bateel's only franchises in North America, and

even though Sud[ia]ry, Atmar, and El[k]urjie are frequently in the United States, Bateel has never visited any of the LCI Franchises." ECF No. 1, ¶63.  Accordingly, there is no indication that any of the individual Defendants has ever visited Michigan.

In its Complaint, the sole allegation Plaintiff makes against the individual Defendants for their activity in relation to this cause of action is that "Al Sudiary, Atmar, Anderson, and [Elk]urjie materially aided Bateel in the sale of the Michigan Franchise to LCI and the operation of Bateel in relation to LCI." ECF No. 1, ¶38.  Plaintiff does not otherwise mention any individual Defendant except in the context of identification and residence purposes, to say which individual Defendants have entered the United States (but not Michigan), or to allege that they are liable under the MFIL for such activity (discussed below).  Plaintiff also generally states that "Defendants have conduct[ed] business in this District. *Id.* at ¶ 12.  The Court finds that the foregoing allegations are not sufficient to establish general or limited personal jurisdiction over any of the individual Defendants.

Even if the Court looks beyond the language in the Complaint, the Court finds that Plaintiff has not identified any actions related to the Agreements that any individual Defendant performed outside his duties as a director of Bateel.  Plaintiff consistently states that the individual Defendants were acting in their capacities as

directors of Bateel.  In its response brief, Plaintiff contends that "LCI simply seeks to have its day in court against all of the Defendants as authorized by the MFIL – Bateel as a company and its directors, Al Sudiary, Atmar, Anderson, and Elkurjie – in the forum and venue that the MFIL requires franchisors like Defendants to allow, Michigan." ECF No. 12, PageID.325-26.   In its Complaint, Plaintiff contends that the individual Defendants are liable for Bateel's violations of the MFIL, as "[a] person who directly or indirectly controls a person liable under this act . . . a principal executive officer or director of a corporation so liable, a person occupying similar status or performing similar function, an employee of a person so liable who materially aids in the act or transaction constituting the violation, is also liable jointly and severally with and to the same extent as the person[.]" *Id.* at ¶38 (citing MCL 445.1532).

"The fact that a corporation does business in Michigan, without more, is insufficient for a court to assert personal jurisdiction over the directors and officers of that corporation." *SFS Check, LLC v. First Bank of Delaware*, 990 F.Supp.2d 762, 771 (E.D. Mich. 2013).  This means that, even if the Court has personal jurisdiction over Bateel, it still must determine whether Plaintiff has established independently personal jurisdiction over each individual Defendant.   It is

undisputed that none of them have entered into a contract relating to Michigan or conducted business in Michigan.

Plaintiff argues that courts applying the MFIL have consistently refused to dismiss "individual defendants as to" MFIL claims "as there has been no development concerning which individuals control which entities." ECF No. 12, PageID.326 (citing *Khamis v. Atlas Oil Co*., 2005 WL 2319001, at *2 (E.D. Mich. Sept. 21, 2005). Plaintiff further argues that the individual Defendants, as directors of Bateel, face liability for Plaintiff's MFIL claims. *Id.* (citing *Lofgren v. AirTrona Canada*, 677 F.App'x 1002, 1009 (6th Cir. 2017). But, potential liability (under MFIL or any other theory) is irrelevant for purposes of determining whether the individual Defendants are subject to personal jurisdiction in the Eastern District of Michigan, and MFIL does not in itself create personal jurisdiction.

As to the actual alleged contacts between the individual Defendants and Michigan, Plaintiff response brief offers the conclusory statement that they exchanged a number of phone calls and emails with LCI in Michigan. *See* ECF No. 12, PageID.332 (citing ECF No. 1 at ¶¶ 21-27) ("For over six years Al Sudiary, Atmar, Anderson, and Elkurjie, and other agents of Bateel placed countless phone calls and sent numerous e-mails to LCI's principal place of business in

Michigan."). In an affidavit in support of its response brief,[2] Plaintiff's representative, Maissan Almaskati ("Almaskati"), states:

> 15 . . . I conducted the negotiations for the Michigan Bateel Franchise (the "Michigan Franchise") in 2016 primarily from Michigan. These negotiations were conducted in English and resulted in LCI and Bateel entering into the Michigan Franchise Agreement.
>
> 16. I conducted the negotiations for the Texas Bateel Franchise (the "Texas Franchise") in 2018. These negotiations were conducted completely from Michigan and were in English.
>
> 17. Both of the negotiations for the Michigan Franchise and Texas Franchise were done through e-mail, text messages, phone, and other electronic communications.
>
> * * * * *
>
> 26. These communications primarily occurred in Michigan, unless I, or the other employees of LCI, were traveling at the time the communication was made.

ECF No. 12, Ex. A. Almaskati further states that, with respect to the individual Defendants, there were: "184 emails between Elkurjie and LCI, for the period of late 2018 through 2022; 36 emails between Anderson and LCI, for the period of 2018 through 2022; 21 emails between Atmar and LCI, for the period of 2018 through 2020; and one, significant, email exchange between Alsudiary and LCI." *Id.* at Ex. A, ¶ 21.

---

[2] In the response brief, itself, other than identifying the individual Defendants, Plaintiff otherwise: (a) does not mention Atmar, Anderson, or Elkurjie at all; and (b) only mentions Al Sudiary three times, all in relation to the UAE and/or Saudia Arabia.

The Court is not persuaded that the conduct of the individual Defendants is sufficient for this Court to exercise personal jurisdiction over them.  Plaintiff has not alleged that the individual Defendants engaged in any activities other than in their capacities as directors of Bateel, which is not enough for personal jurisdiction to attach. *See, e.g., SFS Check*, 990 F.Supp.2d at 772 ("[T]elephone calls are insufficient to establish limited personal jurisdiction over an out-of-state defendant, especially when those telephone calls were made by a corporate officer acting in his or her official capacity.").

## B. Personal Jurisdiction over Bateel

The Court finds that Bateel is subject to personal jurisdiction in the Eastern District of Michigan.  In addition to Plaintiff's indications that Bateel's directors regularly communicated with LCI's representatives in Michigan, the Michigan Franchise Agreement reflects that numerous services were to be provided in Michigan and goods were to be shipped to Michigan to a facility (or facilities) in Michigan central to the Michigan Franchise Agreement that served as the basis for Plaintiff to sell Bateel products.  Specifically, the Michigan Franchise Agreement includes the following provisions:

I. **<u>Grant</u>**

A. Grant of Development Rights

Franchisor [Bateel] hereby grants to Franchisee [LCI], pursuant to the terms and conditions of this Agreement, the sole right to develop retail outlets and e-commerce presence and business for the sale and promotion of products (those set forth in Appendix II) under the System ("Franchised Businesses" or "Outlets" in Michigan, USA (the "Territory") in accordance with the terms and conditions herein set forth.

B. Development Schedule

The Franchisee shall establish a minimum of 3 independent outlets in the first 5 years of operation . . . At least one independent Outlet shall open no later than eight months from the signing of this Agreement.

C. Franchisor Restrictions

. . . Franchisor will not establish any outlets in the Territory, nor will Franchisor enter into any Franchise Agreement with any person to establish and operate an outlet in the Territory.

* * * * *

IV. **DUODTIES OF THE PARTIES**

A. Duties and Obligations of the Franchisor

* * * * *

(4) Supply of Products

Franchisor shall supply Franchisee with its requirements of Bateel products at the then-current prices offered to Franchisees as designated in writing, by Franchisor.   A list of current product categories is presented in Appendix II. [Appendix II lists 14 items and states "Franchisor currently produces or sources the following products for supply to stores owned by Franchisor and Franchisees. . . . [N]o other product other than supplied by the Franchisor shall be sold in the Outlets."]

14

(5)  Site Assistance

Franchisor shall furnish the Franchisee the following:

(a)  Site selection guidelines, and such site selection counseling and assistance as Franchisor may deem advisable;

(b)  Such on-site evaluation as Franchisor may deem advisable in response to Franchisee's requests for site approval;

(c)  A set of prototype plans and specifications (not for construction) for an Outlet; and

(d)  Specifications and sources of supply for all equipment required by outlets.

* * * * *

ECF No. 10, Ex. A-1.

In simple terms and as reflected by the contents of the Michigan Franchise Agreement, by entering into the Michigan Franchise Agreement, Bateel was seeking to utilize Plaintiff to sell Bateel's goods in Michigan.  The Michigan Franchise Agreement provided that Plaintiff had to establish three stores (Outlets) in Michigan within 5 years of the execution, and that those stores (Outlets) would sell exclusively Bateel products.  Those Bateel products were items that Bateel "currently produces or sources the following products for supply to stores owned by Franchisor and Franchisees."  The Michigan Franchise Agreement required that Plaintiff comply with a number of requirements desired by Bateel, including signage and equipment.  And, it was executed by Plaintiff, the Franchisee, for

whom the only address listed was in Michigan.  Finally, there is evidence that Bateel's representatives (including the individual Defendants) frequently communicated with Plaintiff's representatives in Michigan about the duties, obligations, services, and products contemplated by the Michigan Franchise Agreement.

Bateel argues that all of its items and products that were shipped to Plaintiff were shipped from "UAE ex works" (meaning that title and liability for the products transferred in Dubai, UAE).   The Court finds that "fact" is not determinative of where the other contacts existed, Bateel controlled many things, and Bateel's products were being introduced into Michigan's stream of commerce. As Plaintiff notes, Bateel reports that it "has a presence in 16 countries with over 40 boutiques and 30 cafes in premium commercial and residential districts in major cities, stretching from **Detroit** to Jakarta." (emphasis added).

As to Plaintiff's claim regarding the Texas Franchise Agreement, Defendants contend that there is no connection between that agreement and Michigan.  Plaintiff claims that Bateel negotiated the Texas Franchise Agreement with LCI in Michigan and products thereunder were shipped to Michigan. *See* ECF No. 12, Ex. A at ¶¶ 43-44 ("LCI would not take possession of the products Bateel shipped until it arrived at LCI's Southfield [Michigan] warehouse, where the

products would be held until it was cleared both customs and the FDA . . . [and] [a]fter Bateel's products were cleared by the relevant government authorities, LCI would ship the necessary quantities of products to the Michigan Franchise or the Texas Franchise via truck.").

For these reasons, the Court finds that, with respect to all three Counts, Plaintiff has established that Bateel had minimum contacts with Michigan and "purposefully avail[ed] [it]self of the privilege of acting in the forum state [Michigan] or causing a consequence in the forum state," *Beydoun,* 768 F.3d at 505, such that it could reasonably foresee being haled into court in Michigan.

### C. Case Should be Dismissed Based upon Forum Non Conveniens

Defendants argue that this case should be dismissed on forum non conveniens grounds because the UAE is a more appropriate forum. Under the common law doctrine of forum non conveniens, "a federal trial court may decline to exercise its jurisdiction, even though the court has jurisdiction and venue, when it appears that the convenience of the parties and the court and the interests of justice indicate that the action should be tried in another forum." *Associacao Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 618 (6th Cir. 2018). The Sixth Circuit uses a three-part test: "[1] the court determines the degree of deference owed the plaintiff's forum choice, the defendant carries the burden of

[2] establishing an adequate alternative forum and [3] showing that the plaintiff's chosen forum is unnecessarily burdensome based on public and private interests.'" *Id*. at 618–19; *Lakeside Surfaces, Inc. v. Cambria Co., LLC*, 16 F.4th 209, 220 (6th Cir. 2021).

Defendants contend that, although Plaintiff is not a Michigan corporation: (a) Plaintiff is a Delaware corporation, not an UAE entity; (b) Plaintiff has at least an office in this district; (c) products subject to the Agreements were shipped to and from this district; (d) Plaintiff employs persons to carry out the terms of the Agreement (and sell Bateel products) in Michigan and is registered with the Michigan Unemployment Insurance Agency; and (e) events and activities establishing and effectuating the Agreements transpired in Michigan (and Texas), not Delaware, making Michigan the logical venue within which to file the instant cause of action. For these reasons, the Court concludes that Plaintiff is entitled to substantial deference with respect to its choice of venue.

Plaintiff argues that the Court should find that the UAE is not an adequate alternative forum because there is no assurance that Plaintiff could pursue its MFIL and TBOA claims, neither of which Defendants suggest are contemplated under UAE law. The Court does not find that argument relevant, however, as each of the Michigan Franchise Agreement and the Texas Franchise Agreement includes an

"Applicable Law" or "Governing Law" section that expressly provides that it "shall be interpreted and construed under the laws of the United Arab Emirates." *See* ECF No. 10-3, PageID.148, 156. In *Banek v. Yogurt Ventures*, 6 F.3d 357 (6th Cir. 1993), the court affirmed an Eastern District order that held that under Michigan choice of law rules, a court will enforce a choice of law clause if: (1) there is a reasonable relationship between the chosen jurisdiction and the transaction; and (2) its enforcement would not offend public policy considerations). *See Banek, Inc. v. Yogurt Ventures U.S.A., Inc.*, 1992 U.S. Dist. LEXIS 21453, at **10-11 (E.D. Mich. Oct. 15, 1992). The Sixth Circuit also upheld the district court's dismissal of the alleged breaches of the MFIL for failure to state a claim. *Banek*, 6 F.3d at 357.

In this case, there is a reasonable connection between the UAE and the Agreements because Bateel is based in the UAE, the majority of negotiations occurred in the UAE, three individual Defendants are residents of the UAE. And, as in *Banek*, Plaintiff "has failed to cite to any Michigan case that holds that the [MFIL] is a fundamental state policy that voids an otherwise valid choice of law provision in a contract." *Id.* at *16. For these reasons, the Court finds that the choice of law provisions are valid and holds that the laws of the UAE are applicable. *Id.* at *24.

The Court also notes that "[a] forum is adequate if it can remedy the alleged harm." *Jones v. IPX Int'l Equatorial Guinea, S.A.*, 920 F.3d 1085, 1091 (6th Cir. 2019).  The Court finds that Defendants have met their burden of establishing that the UAE is an adequate alternative forum.  Bateel (and the other Defendants) are amenable to process in UAE, as all but Al Sudiary are based in the UAE.  A court in the UAE presumably is competent to interpret and apply the laws of the UAE.

Plaintiff argues in its brief that the foreign forum cannot be adequate if it "'does not permit litigation of the subject matter of the dispute.'" *Associacao Brasileria*, 891 F.3d at 620 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)).  Plaintiff contends that, because the UAE cannot provide remedies for its MFIL and TBOA claims, the UAE is not an adequate forum.  As stated above, however, Plaintiff expressly agreed that the Agreements should be interpreted and governed by the laws of the UAE, so Plaintiff effectively abandoned those claims when it signed the Agreements (there is no argument that the Agreements were signed under duress or because of fraud).

The Court also finds that, based on public and private interests, Plaintiff's choice of forum is unnecessarily burdensome.  First, the law to be applied in this matter is that of the UAE.  Although Plaintiff was arguing that the UAE is a problematic forum because "of the less-than-clear-cut separation between the

political and judicial branches of the UAE government," Plaintiff actually supports

Defendants position when it fails to challenge Defendants' representation that this

is a dispute governed by UAE law that is written in Arabic.  Plaintiff is correct that

the Agreements are written in English and negotiated in English, but that does not

change the fact that the law to be applied is the law of the UAE and it is written in

Arabic.  The Court finds that such factors weigh heavily in favor of Plaintiff's

claims being heard in the UAE.

Plaintiff argues that "Michigan has a very strong public policy interest in

applying the MFIL" and in protecting its citizens from breaches of contract.

*Lakeside Surfaces*, 16 F.4th at 220. But, the MFIL is not relevant here because

UAE law applies and *Banek* suggests that Michigan's interest in the MFIL is not

fundamental.   And, the UAE presumably has, as Defendants argue, a strong

interest in resolving any disputes that may arise under contracts that were

negotiated within its territory and which are governed by its laws. ECF No. 10,

PageID.116.

Plaintiff also argues that much of the evidence and many of the witnesses are

based in the United States, its causes of action accrued here, and Plaintiff operates

in Michigan.  But, it appears that at least as many witnesses are based in the UAE,

Defendant is based in and operates out of the UAE, three of the four individual

Defendants are based in the UAE, and it appears that at least one of the Plaintiff's representatives who negotiated (at least) the Michigan Franchise Agreements (Maissan Al-Maskati) was residing in the UAE at the time it was negotiated. The Michigan Franchise Agreement notably provides that any trainings were to be conducted in the UAE.

The Court concludes that, based on a consideration of the above considerations, that the cause of action should be dismissed for forum non conveniens, for the primary reason that the matter is to be interpreted and governed by the laws of the UAE, something that the UAE courts are far more experienced in applying. Accordingly, the Court does not reach Defendants' arguments that Plaintiff's claims are time barred.

## V.    CONCLUSION

Accordingly, and for the reasons stated above,

IT IS ORDERED that Defendants' Motion to Dismiss Plaintiff's Complaint [ECF No. 10] is DISMISSED.

Judgment shall be entered accordingly,

May 23, 2023                           s/Denise Page Hood
                                       DENISE PAGE HOOD
                                       UNITED STATES DISTRICT COURT